The applicants make a showing and complain that they are unlawfully imprisoned and deprived of their liberty by the sheriff of this county. A writ was allowed on the application, requiring the officer to show cause, if any there was, for the detention' of these persons. The sheriff made return of the writ, together with a statement of the facts upon which the right of detention was based. The essential facts are, in substance : That the parties, Mosler, Mosler and Fletcher, were arrested on complaint of one Schonfield, and taken before a magistrate, charged with violating the provisions of an act of the general assembly, “ To prevent and punish fraud in sales of wearing apparel, at public or private sale, by itinerant vendors, and to regulate all such sales,” passed April 23rd, 1894, and took effect on its passage. The magistrate found them probably guilty, and required them to enter into recognizance, with sureties, for their appearance before the probate court to answer the complaint. They made default in the requirement,, and were by the magistrate committed to prison. The return of the sheriff further shows that the parties are detained in *325 custody by virtue of a mittimus or warrant of commitment issued by the magistrate commanding him to receive them into custody and to safely keep them to answer a criminal charge preferred against them, in violating the provisions of the law in question, which requires the procurement of a license from the state, and a special deposit of money in the sum of $500.00 with the Secretary of State, before advertising or selling wearing apparel as itinerant vendors. <
Applicants concede they are detained by reason of the mittimus issued by the, magistrate in a proceeding instituted and carried forward under warrant of the law in question; yet, they claim that their detention is unlawful, for they say the magistrate had no right to make the order putting them in custody; that he had no jurisdiction in the matter, and for want of such jurisdiction the order is a nullity and void; and because it is void, they claim they are entitled to relief on habeas corpus.
Section 5729, Rev. Stat., provides: “ If it appear that the person alleged to be restrained of his liberty is in custody of an officer under process issued by a magistrate, and that the magistrate had jurisdiction to issue the process, the writ shall not be allowed; or, if jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process or order.” By the law in question, an offense was defined of which the magistrate had jurisdiction to inquire into and make an order of commitment, and so, jurisdiction of the magistrate is made to appear after the writ was allowed, and it follows, if the act of April 23, 1894, is a valid enactment, the applicants are not entitled to relief in this proceeding. If the law is valid, the magistrate was clothed with jurisdiction to examine into the matter of its violation, and issue the order or process of commitment, and under-the provisions of the section just quoted, mere informality or defect in the process will not authorize a discharge. In such case a proceeding in error would be the proper remedy. If, however, the act, under which the order *326 of commitment was issued, is invalid, it conferred no jurisdiction on the magistrate; the order of commitment by him is void and relief from imprisonment thereunder may be obtained by habeas corpus. This is laid down as the rule by the statute, and also by the Supreme Court in the 7 Ohio St. 81, where it is said : “ Imprisonment under a sentence cannot be unlawful unless the sentence is an absolute nullity; and if it is clearly unauthorized and void, relief from imprisonment may be obtained by habeas corpus. But, if the sentence is not void absolutely, a petition in error is the appropriate remedy.” The precise question, therefore, raised in this case is: Is the act of April 23, 1894, a valid enactment, or is it invalid because in conflict with some provision of the constitution of Ohio or of the United States ? The act provides that no itinerant vendor of wearing apparel shall advertise, represent or hold forth any sale as bankrupt, insolvent, etc., or closing out sale, or as a sale of any goods damaged by smoke, fire, water or otherwise, until he has first represented the facts, under oath, to the secretary of state, deposited $500.00 with the secretary, and procured a state and municipal license, authorizing such advertisement and sale. Severe penalties, to be enforced by fine and imprisonment, are provided for violation of the provisions of the act.
Counsel for applicants contend that the act is unconstitutional on a variety of grounds, but no particular section or article of the constitution is pointed out as being violated. It is said it discriminates against one particular kind of goods, and does not affect any other, all other trades and business being unaffected by it. That may be true so far as this law is concerned, for it does not assume to regulate any business exceept that of itinerant vendors of wearing-apparel, but if true, does that fact make it inimical to any provision of the constitution? I think that fact does not furnish a test to determine if it be constitutional or not.
It is said that this law excludes goods and merchandise from outside of the state, and because of it, is in opposition to *327 interstate commerce, and in conflict with the constitution of the United States.
This claim is not sustained or made apparent by a careful reading of the text. No goods or merchandise are excluded, but all are permitted to come in so far as the act is concerned ; only, the "business of an itinerant seller of such goods is regulated by the act, and a deposit of money required as an indemnity to persons who may be defrauded or damaged by such seller.
The criticism that the law discriminates between citizens of this state is not well founded; for it does not. Every citizen that engages in the business of an itinerant vendor of wearing-apparel which has been damaged by smoke or otherwise, or must be sold at a sacrifice — is subject to the rule made by the law. None are exempted from its requirements, so there is no discrimination at all.
Again : it is said the act levies a tax on property, not by a uniform rule and without reference to the true value of the property. If that were so, the claim of invalidity made by counsel would have to be allowed, as taxes on property by express provision of see. 2 of article 12 of the constitution must be by a uniform rule, and according to its true value in money. The act in question does hot levy a tax on property by such uniform rule and according to its money value; nor, I think, does it levy a tax on property at all. It clearly lays the the burden of a tax on a business or occupation described in the law; and its object, seems to be, to prevent fraud as much as may be, and to provide indemnity for the unfortunate public as against damage coming to it from frauds, liable to be practiced by irresponsible persons in the conduct of that particular business or occupation. That this may be done with propriety and without in the least impairing or infringing any of the provisions of the fundamental law, has been held by the Supreme Court a number of times; notably in the 45 Ohio St. 63. Even the case of Sipe v. Murphy et al., 49 Ohio St. 506, cited by counsel for petition *328 ers as bearing on the question, holds the doctrine that the legislature may authorize a municipal corporation to regulate a business or occupation by ordinance, by the imposition of a tax or license fee. Only the regulation and tax or fee charged must not be unreasonable. If the legislature has the constitutional power to regulate and license an occupation indirectly through the channel of a municipal corporation, it certainly has power to do the like directly, as it has done in the act under consideration, and without the intervention of a municipal or other corporation.
But the decision of the Supreme Court in the 45 Ohio St., is directly in point, and decides the questions in this ease, adversely to the claim of petitioners. The court reviews the legislation and decisions of the Supreme Court on the subject, and shows very clearly, I think, that the general assembly has constitutional power to .regulate business or occupations by license, and to compel the payment of a reasonable tax or fee by imposition of a fine. The judge announcing the conclusions of the court, on page 68, uses the following language: “ The burden is placed on the occupation, and not on the property used in the'occupation. The power to tax or regulate by license arises from the general legislative power given by section 1, of article 2, of the constitution, and is not derived from section 2, of article 12. The latter section is but a limitation upon the taxing power, and it has been often held that the requirement of this section is simply that the taxes upon property, as such, shall be by a uniform rule, but that this does not impair the power of the general assembly to use the discretion when the burden is not placed upon property. Section 2 of article 12 by no means exhausts the taxing power.”
In some of the cases decided, and indeed in the case in the 45 Ohio St., the regulating of a business or occupation by license and the imposition of a tax or fee by law, is upheld, not on the broad ground that it was within the general power of the legislature, as declared by the constitution, to levy taxes, *329 for revenue, as perhaps it might have been, but on the narrower ground that a special benefit is conferred on those who follow, an occupation, or that the occupation imposes special burdens on the public, or is injurious.ox dangerous to the public; and the general assembly may well have had one or more of these grounds in mind, when it enacted the law in question. Itinerant vendors of alleged smoked, damaged or bankrupt stocks of wearing-apparel had become, in some localities, an intolerable and all pervading nuisance. They were in fact very prevalent. In many instances the vendors were posssssed of bonafide bankrupt or other stocks of goods, and the public secured bargains really beneficial; while in many more the vendors were unscrupulous swindlers and, dangerous to the unsuspecting public to a high degree. In such case the public was at the mercy of the rascals, and many a well disposed and innocent citizen was misled and made to yield up his hard earned ducats for a mess of shoddy. At times swindling in such and kindred transactions became epidémic. What with Bohemian Oats, Red Line Wheat alleged bankrupt sales of wearing apparel by itinerant vendors, and other schemes to catch and trick the unwary, no rest or safety for the unsophisticated was to be found. Some legislation seemed necessary to protect the public from such unscrupulous itinerant vendors, and the demand for legislative action culminated in the enactment of the law which is said to bé unconstitutiona. May not the law be upheld as valid and constitutional, on the ground that it regulates an occupation that is injurious and dangerous to the public; if not upon the broader ground that its enactment was within the general powers of the legislature to levy taxes for revenue.
The Supreme Court has repeatedly held that such legislation is not in contravention of the constitution, but is clearly authorized by it; at least so in cases and under conditions where it seems to be demanded in the interest of the public, as protecting it from a prevailing and positive evil.
Meehan & Jordan, for applicants.
Theodore Totten, Geo. W. Moss and W. H. Kinder, contra.
Adopting the language of Judge Spear, in the 45 Ohio St., “I think it may safely be affirmed, upon both principle and authority, that the power to regulate by license, and to compel payment of a reasonable fee, may be maintained where a special benefit is conferred at the expense of the general public, or the business imposes a special burden on the public, or where the business is injurious to, or involves danger to the public.” And believing that the exactions required by the sections of the law in question here fairly come within the rule thus stated, I hold the law of April 23, 1894, to be valid.
The prayer of the applicants for relief is denied, and their application dismissed.